# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COOKEVILLE DIVISION

JEFFERY K. CHAFFIN,         )
                                 )
        Plaintiff,        )
                                 )     Civil Action No. 2:12-cv-00047
v.                           )     Judge Nixon / Knowles
                                 )
CAROLYN W. COLVIN,      )
Acting Commissioner of Social Security,[1]  )
                               )
        Defendant.     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on May 27, 2009, alleging that he had been disabled since February 1, 2007,[2] due to "[d]epression and anxiety disorders, hbp, diabetes, learning difficulties, [and] Hypothyroid." Docket No. 11, Attachment ("TR"), TR 92, 101, 131. Plaintiff's applications were denied both initially (TR 59, 61) and upon reconsideration (TR 63, 65).  Plaintiff subsequently requested (TR 77) and received (TR 88) a hearing.  Plaintiff's hearing was conducted on December 9, 2010, by Administrative Law Judge ("ALJ") Frank Letchworth.  TR 17.  Plaintiff and vocational expert ("VE"), Edward Smith, appeared and testified. *Id.*

On January 27, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 54.  Specifically, the ALJ made the following findings of fact:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.   The claimant has not engaged in substantial gainful activity since May 30, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: hypothyroidism, hypertension, and depressive and anxiety disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

[2] At his hearing, Plaintiff amended his disability onset date to May 30, 2008. TR 20.

2

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) [*sic*]

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no more than occasional climbing of ladders, ropes, or scaffolds and frequent performance of all other postural activities.  He should avoid concentrated exposure to extreme cold temperatures.  He is capable of carrying out simple one, two, and three step instructions.  He will have the ability to relate appropriately with peers and supervisors, with only occasional interruptions from psychologically based symptoms.  He can work with the general public, with occasional interruptions from psychologically based symptoms and is capable of adapting to routine work place changes.

6.      The claimant is capable of performing past relevant work as a chicken hanger and box assembler.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 47-54.

On February 18, 2011, Plaintiff timely filed a request for review of the hearing decision. TR 15.  On April 26, 2012, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

3

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which

5

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) failing to find Plaintiff disabled under Listing 12.05C; and (2) improperly discounted Plaintiff's complaints of depression and anxiety when assessing his credibility. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

7

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Meeting or Equaling Listing 12.05C

Plaintiff contends that the ALJ erred in failing to find that Plaintiff's level of mental functioning met or equaled Listing 12.05C. Docket No. 16. Specifically, Plaintiff maintains that the ALJ "erroneously focused on isolated details taken out of context and misconstru[ed] the overall import of the evidence concerning Mr. Chaffin's level of intellectual functioning." *Id.* Plaintiff argues that the ALJ erroneously declined to assign "significant probative weight" to the consultative examination performed by Mr. Jerrell Killian, and that the ALJ was incorrect in determining that Mr. Killian did not address Plaintiff's adaptive functioning. *Id.* Plaintiff maintains that Mr. Killian's analysis of his adaptive functioning has satisfied his burden of demonstrating his requisite deficits in adaptive functioning. *Id.*

Plaintiff additionally contends that the ALJ improperly relied upon the opinion of non-examining consultant, Mr. Mark Loftis, and also improperly relied upon Plaintiff's function report and notes from his medical provider that did not address mental retardation at all. *Id.* Plaintiff argues that his basic activities are not inconsistent with mild mental retardation, and that his inabilities to spell "world" backwards and carry out serial threes further support his claims. *Id.* Plaintiff also asserts that the ALJ failed to consider what effect Plaintiff's intellectual limitations would have on his ability to work. *Id.*

Finally, Plaintiff takes issue with the fact that the ALJ did not refer to his school records, which he contends supported his testimony. *Id.* Specifically, Plaintiff maintains that, although he obtained his high school diploma, he was ranked "very low" in his class, had not achieved

8

greater than a fifth grade level in spelling and a third grade level in language, and functioned

overall on average at a sixth grade level. *Id.* Plaintiff asserts that his school performance and his

testimony are consistent with mild mental retardation and indicate that his intellectual problems

started before age 22, such that the requirements for Listing 12.05C are met or functionally

equaled. *Id.*

Defendant responds that the ALJ properly determined that Plaintiff did not meet or equal

Listing 12.05C. Docket No. 23. Defendant maintains that, in order to meet or equal Listing

12.05C, Plaintiff must have demonstrated both the requisite IQ scores *and* the requisite deficits

in adaptive functioning that manifested prior to age 22. *Id.* Defendant argues that Plaintiff did

not demonstrate the deficits in adaptive functioning required to meet or equal Listing 12.05C. *Id.*

Specifically, Defendant notes that the ALJ considered Plaintiff's school proficiency tests,

activities of daily living, and work history in evaluating his adaptive functioning ability. *Id.*

Regarding Plaintiff's intellectual limitations, Defendant responds that Plaintiff's ability to work

at a chicken packing plant for ten to eleven years and safely handle a fork lift suggests only mild

adaptive functioning limitations. *Id.*

With regard to Listing 12.05, "Mental retardation," the Code of Federal Regulations

states:

> Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> initially manifested during the development period; *i.e.*, the
> evidence demonstrates or supports the onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>
> . . .

9

C.  A valid verbal, performance, or full scale IQ of 60 through 70
and a physical or other mental impairment imposing an additional
and significant work-related limitation of function...

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05.

As can be seen, the Regulations explicitly require that in order to meet or equal Listing

12.05C, the claimant must satisfy the diagnostic description in the introductory paragraph, as

well as the criteria contained in paragraphs (A), (B), (C) or (D).  Regarding the introductory

requirements, the ALJ found that Plaintiff did not adduce evidence of the requisite deficits in

adaptive functioning. TR 50. Specifically, the ALJ explained:

> Although the claimant obtained a private psychological evaluation
> which yielded an IQ score of 70 and a diagnosis of "mild mental
> retardation," the undersigned declines to assign significant
> probative weight thereto. (Exhibit 15F) Such testing and diagnosis
> were provided long after the developmental period described in
> section 12.05. During such developmental period, the undersigned
> notes that the claimant actually passed school proficiency tests.
> (Exhibit 1E) The private consultative examiner provided no
> analysis of the claimant's adaptive functioning, which is a crucial
> element to be considered in determining whether section 12.05
> criteria are satisfied. A review of the evidence shows that the
> claimant is capable of such activities as using a checkbook,
> driving, and shopping without assistance. A consultative examiner
> noted his ability to engage in abstract thinking and interpretation of
> proverbs. That examiner also noted the claimant appeared to have
> average intellectual functioning. Considering all evidence,
> including Exhibits 6F, 13F, and 6E, the undersigned finds that the
> criteria of section 12.05, notably section 12.05C, have not been
> satisfied therein.

*Id.*

Addressing in turn each of Plaintiff's arguments regarding the evidence used by the ALJ

to determine that Plaintiff did not demonstrate the requisite deficits in adaptive functioning,

Plaintiff first argues that the ALJ's statement that consultative examiner Mr. Killian "provided

10

no analysis of [Plaintiff's] adaptive functioning" was erroneous because Mr. Killian did, in fact,

address Plaintiff's adaptive functioning.  Docket No. 16.  Regarding that assessment, on

November 17, 2010, at the request of Plaintiff's counsel, consultative examiner, Mr. Killian,

administered the Wechsler Adult Intelligence Scale - Fourth Edition test to Plaintiff, in order to

evaluate Plaintiff's IQ.  TR 328-29.  Upon completion of the examination, Mr. Killian found

Plaintiff's Composite Scores to be as follows:

| | |
|---|---|
| Verbal Comprehension | 70 |
| Perceptual Reasoning | 73 |
| Working Memory | 83 |
| Processing Speed | 76 |
| Full Scale | 70 |

TR 328.

Mr. Killian noted:

> Working Memory is a strength relative to the other composite
> scores. However, it is still within the borderline range which is
> below average, and the Verbal Comprehension and Full Scale
> scores are within the mild mental retardation range.
>
> These scores seem consistent with Mr. Chaffin's adaptive
> functioning.  He stated it took him several attempts to pass the
> written portion of the driver's license testing.  He has not lived on
> his own and has assistance from his mother with whom he lives.
> He stated he has not done laundry and has not cooked except for
> the use of a microwave.  He tried using a checking account but had
> to go back to cash when he had an overdraft.

TR 329.

Mr. Killian diagnosed Plaintiff with "Mild Mental Retardation," and noted his

"Functional Assessment and Vocational Implications" as follows:

> [Plaintiff's] effort seemed to be very good, and it is believed
> therefore the results obtained are valid.  Indications are he is
> capable of learning and sustaining simple, one and two step

activities but is limited in terms of activities requiring assessment, reasoning, and problem solving.

*Id.*

While Plaintiff is correct in noting that Mr. Killian *mentioned* Plaintiff's adaptive functioning in his report, as can be seen, Mr. Killian did not *analyze* Plaintiff's adaptive functioning. In fact, regarding Plaintiff's adaptive functioning, Mr. Killian simply stated that "[t]hese scores seem consistent with Mr. Chaffin's adaptive functioning," and he recounted Plaintiff's subjective reports as support. TR 50, 329. Additionally, the ALJ observed:

> It is emphasized that the claimant underwent this examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, Mr. Killian was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. Ultimately, Mr. Killian's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive, and the undersigned thus declines to adopt it (Exhibit 15F).

TR 53.

Contrary to Plaintiff's argument, Mr. Killian's examination does not demonstrate that Plaintiff has satisfied his burden of demonstrating the requisite deficits in adaptive functioning. Plaintiff's contentions regarding the ALJ's treatment of the consultative examination of Mr. Killian fail.

As noted above, Plaintiff also argues that the ALJ improperly relied upon the opinion of non-examining consultant, Mr. Mark Loftis. Docket No. 16. On August 3, 2009, in order to determine Plaintiff's eligibility for disability benefits, Jennifer Clark (under the supervision of Mr. Loftis) examined Plaintiff for a psychological evaluation to be completed by Mr. Loftis

12

regarding Plaintiff. TR 48, 228-32. In that evaluation, Mr. Loftis noted in relevant part as follows:

> OBSERVATION:
>
> . . . [Mr. Chaffin] arrived on time for his appointment. He drove, but his girlfriend accompanied him to the appointment. . . . His fine and gross motor skills appeared to be within normal limits. He appeared to have adequate hearing. His verbal skills were adequate. He was cooperative during the course of the evaluation. His affect was normal. He maintained good eye contact throughout the evaluation.
>
> PSYCHOSOCIAL:
>
> . . . The claimant completed high school in 1984 at Jackson County High School.
>
> Mr. Chaffin last worked for Tri-State Distribution as a packer. He worked for a few weeks and has been off work for about ten months. He had worked at Perdue Farms, a chicken processing plant for about ten years. . . .
>
> DAILY ACTIVITIES:
>
> [Mr. Chaffin] lives in his family home. He does a few chores, but not much. He picks up the house some. His mother does most of the housework and cooking. He mows the yard and keeps a small garden. His mother manages the household finances. She is retired. He maintains his toileting and hygiene needs independently. He goes to bed each night about 10:00 PM and gets up around 6:00 AM. He denied taking naps during the day. He watches television to pass the time. He denies having much in the way of hobbies other than watching football. He will go to the store some and will pick up groceries with his Foodstamps. He does not socialize very often. He goes to visit his girlfriend a couple of times per week. It appears that the claimant's executive functioning skills are intact.

TR 48, 228-29.

With regard to Plaintiff's mental status evaluation, Mr. Loftis recounted:

13

On the day of the evaluation, the claimant was well oriented in all spheres. He had an adequate general fund of knowledge. He could not spell the word "world" backwards, and he could do serial threes backwards three times correctly. He was asked to recall his social security number, which he could provide. His thought content and processes were logical and coherent. He did put forth good effort during the course of the evaluation. He could answer simple arithmetic problems. The claimant appeared to be a reliable personal historian. Although no formal evaluation of intelligence was requested, he appears to be in the average range of intellectual functioning. He gave appropriate responses to simple questions such as the shape of a ball and the colors of the American flag. He could relate current news events regarding Obama's Cash for Clunkers being in the news. He reports if he found an envelope on the street, he would "take it to the post office." He was able to interpret the proverb regarding spilled milk as "if you have a problem, just go on with it." He identified the similarities between a dog and lion is [*sic*] that both are animals. He noted that the similarity between an apple and a grape is that they are both fruit. His affect and mood were normal. He could recall his mother's maiden name. He could recall the name of the current president and the name of the preceding president's name [*sic*]. He was given three words and recalled one of them after a five-minute interval. There was no evidence of malingering.

TR 48, 230.

Mr. Loftis diagnosed Plaintiff with "Anxiety Disorder, NOS and Depressive Disorder,

NOS," explaining his diagnostic impression as follows:

The claimant is not currently under psychiatric care. He has been prescribed medication for anxiety and depression after his father died when he was nineteen. He watched his father die at home from a brain hemorrhage. Since that time he has struggled with depression and anxiety. He is not presently taking medication now [*sic*] for anxiety or depression. He has sleep problems and occasional crying spells. He has little motivation and feels down on himself. He avoids social situations as much as he can and really does not know why. He feels anxious around people and describes himself as a "nervous person." He denied hallucinations, suicidal ideation and homicidal ideation. The claimant reports that he has had transient suicidal thoughts in the past, with no history of attempts or true intent. He reports episodes in the past when he

14

became so anxious trying to work he would actually vomit. He
feels a general state of anxiety most of the time, per his report.

He rated the intensity of his anxiety symptoms as being 9 out of
10. He rated his depressive symptoms as 7 or 8 out of 10 in
severity.

TR 48, 230-31.

Mr. Loftis rated Plaintiff's functional assessment as:

Understanding and remembering: Mr. Chaffin has a mild
impairment to understand and recall instructions. Simple,
repetitive tasks are not likely to be impaired.

Concentration, persistence and pace: Mr. Chaffin has a mild
impairment in concentration skills, persistence and ability to
maintain a competitive pace.

Social Interaction: Mr. Chaffin has a few problems with social
interactions. It is believed that he is moderately limited in social
interaction skills necessary to deal with coworkers and supervisors.

Adaptation: Mr. Chaffin is mildly limited in his ability to adapt to
changes found in most work situations.

A functional medical evaluation would be beneficial to determine
how the alleged medical problems might affect mobility,
endurance and physical resiliency.

TR 48, 231.

Plaintiff argues that the ALJ's reliance on Mr. Loftis' opinion was improper because that

opinion was inconsistent with that of Mr. Killian, and because Mr. Loftis: (1) concluded

"without testing" that Plaintiff was functioning in "at least the average range of intelligence"; (2)

noted that Plaintiff had a driver's license but failed to ask him "how many times it took him to

pass the driver's license test"; (3) noted that Plaintiff was not able to spell the word "world"

backwards; and (4) noted that Plaintiff was able to perform serial threes backwards only three

15

times.  Docket No. 16 at 15-16.  As has been discussed, however, the ALJ appropriately rejected

Mr. Killian's opinion. TR 49-50, 53.  After recounting Mr. Loftis' findings (TR 48), the ALJ

explained his acceptance of those findings and the weight accorded thereto:

> Mr. Loftis, the consultative psychological examiner's opinion is
> consistent with the assessments of the reviewing State Agency
> psychologists who found that the claimant has mild to moderate
> mental impairments.  Although State Agency psychologists were
> non-examining, and therefore their opinions do not, as a general
> matter, deserve as much weight as those of examining or treating
> psychologists, their opinions do deserve some weight, particularly
> in a case like this in which there exist a number of other reasons to
> reach similar conclusions.  Said opinions are largely consistent
> with the objective and clinical evidence of record and have been
> afforded significant weight (Exhibits 10F, 11F, 16FF, and 17F).

TR 53.

As can be seen, the ALJ acknowledged that generally the opinions of examining and

treating physicians/psychologists are accorded greater weight than those of non-examining

physicians/psychologists, but explained that, in the case at bar, the opinion at issue was "largely

consistent with the objective and clinical evidence of record" and was one of "a number of other

reasons to reach similar conclusions."  *Id.*  Accordingly, Plaintiff's contentions regarding the

weight accorded to Mr. Loftis' opinion are unavailing.

Plaintiff additionally argues that, when discounting Dr. Killian's opinion, the ALJ also

improperly relied upon Plaintiff's function report and notes from his medical provider that did

not address mental retardation "at all."  Docket No. 16 at 16.[4]  On June 6, 2009, Plaintiff

_____

[4] Plaintiff cites his function report as Exhibit 6E and the notes from his medical provider
that did not address mental retardation as Exhibit 6F.  Docket No. 16 at 16.  Exhibit 6F,
however, is Mr. Loftis' psychological evaluation of Plaintiff. *See* Court Transcript Index, p. 2;
TR 228-32. Mr. Lofis was a non-examining consultant, not one of Plaintiff's medical providers.
*See* TR 228-32.  Accordingly, this portion of Plaintiff's argument cannot actually be referencing

personally completed the function report to which he refers.  TR 147-54.  In the "daily activities" section of that function report, Plaintiff wrote that between the time he woke up until the time he went to bed, he would "Get up[,] wash face, empty trash, take medication ... sit around and watch TV, and eat."  TR 147.  Plaintiff also wrote that he would  "Work sometimes in the garden, and feed his pets."  *Id.*  Plaintiff reported that he was able to use the toilet himself, dress himself, bathe himself, care for his hair, and shave himself, although sometimes he did not feel like bathing, washing his hair, or shaving.  TR 148.  Plaintiff noted that his mother did the cooking, that he did not know how to cook, and that sometimes he "can't" eat.  TR 148-49.  He reported being afraid to be sociable and not liking to be around people.  TR 148.  He reported that he would spend approximately two hours per week mowing the yard and one hour per week gardening, but that he needed to "push" himself to do it or have his family "push" him to do it.  TR 149.  He reported going outside two or three times per day, either by driving a car or riding in a car, and he indicated that he was capable of going out alone.  TR 150.  Plaintiff reported shopping in stores once or twice per week for approximately thirty minutes to buy food and candy.  *Id.*  He indicated that he was able to pay bills, count change, handle a savings account, and use a checkbook.  *Id.*

Plaintiff reported that his hobbies were gardening and watching sports on TV, and that he would garden once a week and watch sports for one to two hours per day.  TR 151.  He indicated that "sometimes" he did not want to watch sports or anything on television, but "likes to lay in the bed all day."  *Id.*  He reported that he would sit and watch TV with his family every day, that

---

Exhibit 6F.   Because the undersigned has discussed Mr. Loftis' psychological evaluation of Plaintiff in detail above, and Plaintiff does not specify which medical provider's notes to which he refers, the undersigned will not address this portion of Plaintiff's argument.

he just wanted to "lay around, and not do anything" because he was depressed, and that he did not want to be around people other than his family. TR 151-52. Plaintiff indicated that the only place he went to on a regular basis was the grocery store once or twice per week, that he did not need to be reminded to go to the store, and that he was able to go alone. TR 151.

Plaintiff opined that his depression affected his ability to lift, squat, bend, stand, reach, walk, kneel, talk, complete tasks, concentrate, understand, follow instructions, and get along with others because he was so depressed that he just did not want to do anything. TR 152. He indicated that he does not walk, cannot comprehend "very well," and does not follow written or spoken instructions very well, although he does complete what he starts. *Id.* Plaintiff reported that he got along "well" with authority figures, but did not handle stress or changes in routine very well. TR 153. Plaintiff reported fearing that he was going to die in the bathroom, because he witnessed his father die in the bathroom. *Id.* Plaintiff also noted that he "gets pain in chest, and other parts of the body," and thinks people are watching him and talking about him. TR 154.

Plaintiff conclusorily contends that, when discounting Mr. Killian's opinion, the ALJ erroneously relied upon the function report that he personally completed. Docket No. 16 at 16. Plaintiff does not explain how the ALJ's use of Plaintiff's own report to discount Mr. Killian's opinion would be erroneous, and the undersigned fails to see how this argument supports Plaintiff's position on this point, particularly because Plaintiff contends in that report, *inter alia*, that he cannot understand written or spoken instructions very well and that he has problems concentrating because he does not comprehend things well. *Id.*; TR 147-54. Moreover, as discussed above, the ALJ properly evaluated and discounted Mr. Killian's opinion. Plaintiff's contention on this point is likewise unavailing.

18

Plaintiff additionally argues that his level of functioning is "entirely consistent with mild mental retardation as described in the DSM-IV," and that his "basic activities are not inconsistent with mild mental retardation." Docket No. 16 at 16-17. As an initial matter, whether Plaintiff's level of functioning is "entirely consistent with mild mental retardation as described in the DSM-IV" is inapposite to whether Plaintiff's level of functioning is "entirely consistent with mild mental retardation" for disability purposes.[5] The pertinent question is whether Plaintiff met or equaled all of the requirements to satisfy Listing 12.05C.

With regard to Plaintiff's claim that his basic activities "are not inconsistent with mild mental retardation," the ALJ specifically considered Plaintiff's daily activities, recounting both Plaintiff's activities as self-reported on his function report (TR 50), discussed above, and his activities as self-reported during his hearing testimony (TR 47-48), and ultimately concluded:

> In activities of daily living, the claimant has mild restrictions. The claimant reported that he attends to his personal needs, pays bills, and cares for his pets. In social functioning, the claimant has moderate difficulties. The claimant reported grocery shopping, eating out, and spending time with his family and girlfriend. He is apparently able to function in an appropriate manner in the public

---

[5] Plaintiff maintains that the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. ("DSM-IV"), American Psychiatric Association, Washington, DC, 1994, p. 41, states with regard to people who are mildly mentally retarded:

> During their adult years, they usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate support, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

Docket No. 16 at 16-17. As can be seen, this description is vastly different from the requirements of Listing 12.05C, set forth *supra*.

domain in such places as doctor's offices, grocery stores, and other
facilities. The claimant demonstrated no abnormal social
behaviors during the hearing. With regard to concentration,
persistence or pace, the claimant has mild difficulties, as he
reported watching television, mowing the yard, driving, and
working in the garden. At the hearing, the claimant demonstrated
average intellectual functioning and was able to understand and
follow the hearing proceedings and all lines of questioning. As for
episodes of decompensation, there is no indication that the
claimant has experienced any episodes of decompensation.

TR 51, 147-51. As will be discussed in greater detail in the statement of error below, the ALJ

also evaluated Plaintiff's complaints in the context of his daily activities, finding:

The claimant's admitted daily activities are not limited to the
extent one would expect, given his complaints of disabling
symptoms and limitations.

TR 53-54.

With respect to Plaintiff's contention that his inabilities to spell "world" backwards and

carry out serial threes backwards only three times further support his claim that he is mild

mentally retarded, as discussed above, the ALJ properly evaluated the psychological evaluation

completed by Mr. Loftis which noted those inabilities. The ALJ was, therefore, aware of Mr.

Loftis' report that Plaintiff was unable to spell "world" backwards and could perform serial

threes backwards for only three sets, and nevertheless determined the limitations delineated

above.

Regarding Plaintiff's contention that the ALJ failed to consider what effect Plaintiff's

intellectual limitations would have on his ability to work, part C of section 12 of the Listings,

defines a functional limitation that is considered "sufficiently significant" as one that

"significantly limits [one's] physical or mental ability to do basic work activities." 20 CFR, Pt.

404, Subpt. P, App. 1, Listing 12.00. In finding that the record in the case at bar demonstrates

20

that Plaintiff's mental limitations do not restrict his ability to do basic work activities, the ALJ discussed the medical and testimonial evidence of record, as demonstrated above. TR 38-39, 54. The ALJ also noted that the vocational expert testified that Plaintiff "would be able to perform the chicken hanging operation, as it is at best a two to three step operation"; and further noted that "[t]he vocational expert further testified that the claimant 'would certainly be able to perform the duties of a box assembler.'" TR 38, 54. Additionally, as discussed by the ALJ, Plaintiff's medical record from Volunteer Behavioral Health Care demonstrates that the anxiety issues that caused Plaintiff to leave his previous job were controlled by medication and treatment, such that Plaintiff would again be able to work. TR 49, 338-42.

Finally, although Plaintiff argues that the ALJ "did not refer at all" to his school records as supporting evidence of mild mental retardation, the ALJ explicitly stated:

> [Plaintiff] completed high school . . . . During such developmental period, the undersigned notes that the claimant actually passed school proficiency tests. (Exhibit 1E)

TR 48, 50, 114-15.

Plaintiff reports that, while he obtained his high school diploma, he "was ranked very low in his class and had not achieved greater than a 5th grade level in spelling and a 3rd grade level in language." Docket No. 16 at 17. Plaintiff argues that "[t]he DSM-IV provides that people with mild mental retardation can acquire academic skills up to about the sixth grade level." *Id., citing* DSM-IV at p. 41. As noted above, whether Plaintiff meets the DSM-IV definition of mild mental retardation does not bear on whether Plaintiff meets or medically equals the requirements of Listing 12.05C, which is the issue presented in this statement of error, and which directly bears on the ultimate issue of whether Plaintiff is disabled under the Act.

The ALJ in the case at bar appropriately noted Plaintiff's school performance and graduation, along with the medical and testimonial evidence discussed above regarding Plaintiff's intellectual capacity and reported daily activities, and determined, *inter alia*, that Plaintiff's deficits in adaptive functioning did not meet or medically equal the requisite level of severity to satisfy the requirements for Listing 12.05C, and that Plaintiff's mental impairments did not restrict his ability to perform past relevant work-related activities. *See, e.g.,* TR 38-39, 50, 54, 114-15, 147-51, 228-32.

As can be seen through the detailed analysis above, the ALJ properly evaluated the evidence of record. Substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a Listing; the ALJ's decision must stand.

## 2. Plaintiff's Credibility

Plaintiff contends that the ALJ erroneously discounted his complaints of depression and anxiety when finding that Plaintiff's subjective complaints were not fully credible. Docket No. 16. Specifically, Plaintiff argues that the ALJ should have found Plaintiff to be credible because both Mr. Killian and Mr. Loftis deemed him to be credible, anc because his testimony, reports, and evaluations "are all consistent." *Id.* at 20.

Defendant responds that the ALJ properly evaluated Plaintiff's credibility because there was "considerable inconsistency between Mr. Chaffin's allegations and the evidence as a whole." Docket No. 23. Specifically, Defendant argues that Plaintiff's testimony regarding his anxiety and depression conflicted with his statements to his physicians about his improved condition after treatment. *Id.* Defendant further contends that the record illustrates that Plaintiff's anxiety and depression were treated effectively and quickly, and that Plaintiff's

statements to his physicians about his improvement were properly considered by the ALJ when determining Plaintiff's disability. *Id.* Accordingly, Defendant argues that the ALJ properly evaluated and discounted Plaintiff's credibility. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6ᵗʰ Cir. 1986) (*quoting* S. Rep. No. 466, 98ᵗʰ Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6ᵗʰ Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, when evaluating Plaintiff's credibility and complaints of depression and anxiety, the ALJ considered Plaintiff's statements regarding his daily activities, noting:

> [Plaintiff] reported that he watches television, cares for his pets, shops for groceries, interacts with his family and girlfriend, goes out to eat, mows the yard, works in the garden, drives, and attends to his personal needs. The claimant's admitted daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. His ability to carry out a range of daily activities tends to negate the credibility of his subjective complaints.

TR 53-54, 147-51.

The ALJ also considered his observations of Plaintiff during the hearing, stating:

> The claimant demonstrated no abnormal social behaviors during the hearing . . . At the hearing, the claimant demonstrated average intellectual functioning and was able to understand and follow the hearing proceedings and all lines of questioning.

TR 20-36, 51.

The ALJ additionally discussed Plaintiff's medical records indicating treatment and improvement in his condition. TR 48-49, 53, 260-62, 267-308, 313, 319, 331-35, 338-42. Specifically, the ALJ stated:

24

Medical records of Satellite Med-Cookeville from April 2009 to May 2010 indicate the claimant . . . consistently reported the claimant had no pain, judgment and insight were intact, memory was intact for recent and remote events, he was oriented to time, place, and person, and had no depression, anxiety, or agitation. In November 2009, the claimant denied any problems or concerns and reported that he felt well (Exhibit 13F).

. . .

Dr. Phay, a State Agency psychologist reviewed the claimant's records in September 2009 and concluded that the claimant was able to understand, remember, and carry out simple one, two, and three stop [*sic*], detailed and multi-step instructions. He was able to make simple and independent work-related decisions. He had the ability to maintain attention and concentration for periods of at least two hours and complete a normal workweek with acceptable performance and productivity for above tasks. He had the ability to relate appropriately with peers and supervisors with occasional interruptions from psychologically based symptoms. He was able to work with the general public with occasional interruptions from psychologically based symptoms. He was able to maintain basic standards of neatness and cleanliness, set goals, adapt to routine work place changes, and travel to and from work. Dr. Williams affirmed the initial determination in December 2009 (Exhibits 10F and 11F).

The claimant established care with Volunteer Behavioral Health Care System in May 2010. The initial intake indicated the claimant met criteria for anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified and was referred to counseling and medication management. The claimant's girlfriend stated the claimant had been improving since his last medication change with elevated, less agitation, better sleep, and doing more things for himself in June 2010. In July 2010, the claimant reported that he could tell the Prozac had helped, but still felt depressed sometimes. He was enjoying some things, getting out more, and had more energy and motivation. He cited he was doing better and did not feel as anxious or depressed in September 2010. He felt depressed once every two to three weeks and this lasted for one to two hours usually. He was sleeping and eating well and had been getting out more and enjoying it (Exhibits 14F, 16F, and 17F).

*Id.*

25

After considering the objective and testimonial evidence of record, in its entirety, the ALJ determined that Plaintiff's complaints were inconsistent with the objective medical evidence. TR 26, 31-34, 52-54, 228-32, 233-36, 313, 319, 331-35, 338-42. Specifically, the ALJ stated:

> The undersigned finds that the claimant's subjective complaints of disabling physical limitations are disproportionate to the objective clinical and diagnostic medical evidence. That is, clinical and diagnostic records fail to document any abnormality, which could reasonably be expected to result in the degree of limitations alleged. The claimant has not received the type of medical treatment one would expect for a totally disabled individual. No treating physician noted any significant abnormalities or assigned any restrictions. The claimant has been prescribed only conservative treatment with medication. . . . .
>
> The claimant also received conservative treatment for his depression and anxiety. The claimant's failure to pursue any ongoing treatment by a mental health professional prior to May 2010 is inconsistent with the extent of psychological symptoms that he alleged experiencing. He has been seen by Volunteer Behavioral Health Care System on seven occasions from May 2010 to September 2010. Although the claimant has received treatment for his allegedly disabling conditions, that treatment has been essentially brief, routine, and conservative in nature. . . .
>
> . . .
>
> Although the claimant has been prescribed anti-depressant medications for his allegedly disabling symptoms, which would normally weigh somewhat in his favor, the record also reveals that this treatment has been generally successful in controlling those symptoms when taking the medications as prescribed and attending scheduled therapy sessions. In September 2010, the claimant reported he was doing better and did not feel as anxious or depressed. He felt depressed once every two to three weeks, only lasting for one to two hours. He was sleeping and eating well and had been getting out more and enjoying it.
>
> . . .
>
> [A]ssessments of physical and mental functional capacity are not

26

consistent with an inability to perform work activity. Objective
findings are minimal despite the claimant's complaints . . . .
[C]onsideration of the totality of the factors leads to a conclusion
that the claimant's allegations of disabling symptoms and
limitations cannot be accepted.

*Id.*

As can be seen, the ALJ's decision specifically addresses in great detail not only the

medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that

these factors were considered. TR 53. It is clear from the ALJ's articulated rationale that,

although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on

medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's

province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

medical evidence against Plaintiff's subjective claims of pain and reach a credibility

determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th

Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight

and deference, particularly because the ALJ is charged with the duty of observing the claimant's

demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461,

463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions

among the medical reports, the claimant's testimony, the claimant's daily activities, and other

evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*,

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir.

1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly

state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the

reasons must be supported by the record (*see King*, 742 F.2d at 975).

27

After assessing all of the objective and testimonial evidence, the ALJ determined that the objective medical evidence, Plaintiff's reportedly effective treatment, and Plaintiff's admitted daily activities contradict Plaintiff's allegedly disabling symptoms, such that Plaintiff's subjective complaints were less than fully credible. TR 38-39, 53-54, 114-15, 147-51, 228-32, 233-36, 238-45, 260-62, 313, 319, 331-35, 338-42.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

29