**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERY KENDELL CHAFFIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No 2:12-cv-00047** |
| **v.** | ) | |
| | ) | **Judge Nixon** |
| **CAROLYN W. COLVIN,** | ) | **Magistrate Judge Knowles** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant,** | ) | |

## ORDER

Pending before the Court is Plaintiff Jeffery Kendell Chaffin's Motion for Judgment on

the Administrative Record ("Motion") (Doc. No. 15), filed with a Memorandum in Support (Doc.

No. 16). Defendant Commissioner of Social Security ("Commissioner") filed a Response. (Doc.

No. 23.) Magistrate Judge Knowles subsequently issued a Report and Recommendation

("Report"), recommending that Plaintiff's Motion be denied and that the decision of the

Administrative Law Judge be affirmed. (Doc. No. 24 at 28.) Plaintiff then filed Objections to

the Magistrate's Report and Recommendation. (Doc. No. 25.) Upon review of the Report and

for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES**

Plaintiff's Motion.

**I.     BACKGROUND**

   *A.  Procedural Background*

Plaintiff filed applications for Disability Insurance Benefits ("DIB") (Tr. 92–100)[1] and

Supplemental Security Income Benefits ("SSI") (Tr. 101–04) on May 27, 2009, alleging a

---

[1] An electronic copy of the administrative record is docketed in this case at Doc. No. 11.

disability onset date of February 1, 2007,[2] due to depression and anxiety disorders, high blood

pressure, diabetes, "learning difficulties," and hypothyroidism (Tr. 131).  Plaintiff's applications

were denied initially on September 8 and 21, 2009 (Tr. 59–62), and again upon reconsideration

on January 26, 2010 (Tr. 63–66).  Plaintiff requested and received a hearing (Tr. 77–78, 88–89),

which was conducted on December 9, 2010, by Administrative Law Judge ("ALJ") Frank

Letchworth (Tr. 17–41).  The ALJ determined Plaintiff was not disabled within the meaning of

the Social Security Act and Regulations on January 27, 2011.  (Tr. 54.)

     ALJ Letchworth made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
2. The claimant has not engaged in substantial gainful activity since May 30, 2008, the amended onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
3. The claimant has the following severe impairments: hypothyroidism, hypertension, and depressive and anxiety disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no more than occasional climbing of ladders, ropes, or scaffolds and frequent performance of all other postural activities. He should avoid concentrated exposure to extreme cold temperatures. He is capable of carrying out simple one, two, and three step instructions. He will have the ability to relate appropriately with peers and supervisors, with only occasional interruptions from psychologically based symptoms. He can work with the general public, with occasional interruptions from psychologically based symptoms and is capable of adapting to routine work place changes.
6. The claimant is capable of performing past relevant work as a chicken hanger and box assembler. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

---

[2] At his hearing, Plaintiff amended his disability onset date to May 30, 2008. (Tr. 20).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 47–54.)

Plaintiff filed a timely request for review of the hearing decision. (Tr. 15.) On April 26, 2012, the Appeals Council issued a letter declining to review the case, rendering the decision of the ALJ the final decision of the Commissioner. (Tr. 1–3.) On June 7, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). (Doc. No. 1.)

Pursuant to Judge Knowles's August 27, 2012, order (Doc. No. 12), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 15), along with a Memorandum in Support (Doc. No. 16) on October 26, 2012. The Commissioner filed a Response on March 18, 2013 (Doc. No. 23), and Judge Knowles issued his Report recommending Plaintiff's Motion be denied on June 10, 2013 (Doc. No. 16). On June 24, 2013, Plaintiff filed Objections to the Magistrate's Report and Recommendation, asserting two main objections to Judge Knowles's Report. (Doc. No. 25.) The Court now reviews the Report, considering Plaintiff's objections.

*B. Factual Background*

Plaintiff was born on November 10, 1965. (Tr. 59.) Plaintiff initially alleged the following disabling conditions: anxiety, depression, "learning difficulties," high blood pressure, diabetes, and hypothyroidism. (Tr. 131.) The ALJ found that Plaintiff has not performed substantial gainful activity since the alleged onset date of disability. (Tr. 47) At his hearing, Plaintiff testified that he has no income apart from food stamps. (Tr. 20.)

Plaintiff testified that he finished the twelfth grade and received a regular diploma, though he attended some special education classes in elementary and high school. (Tr. 24–25.)

Plaintiff lives with his mother, and has neither been married nor had children. (Tr. 20.) Plaintiff has a driver's license, though he testified that he only passed the written test after five attempts, and did so with help from "the troopers." (Tr. 24–25.) Plaintiff further testified that he can read a newspaper and some, but not all, road signs. (Tr. 25–26.) Plaintiff worked for approximately ten years at Perdue Farms driving a "tow motor" (fork lift) as well as performing other activities, such as plucking chickens and putting boxes together. (Tr. 21–22.) However, he quit this job due to "nerves," depression, and anxiety. (Tr. 22–23.)

Medical records indicate that Plaintiff began receiving treatment for hypertension and hypothyroidism, along with obtaining prescription refills and laboratory work, at Satellite Med-Cookeville in April 2009. (Tr. 267–308.) Treatment notes consistently reported Plaintiff's lack of pain, depression, anxiety or agitation; intact judgment and insight for recent and remote events; and proper orientation to time, place, and person. (Tr. 267–289.) In November 2009, Plaintiff denied any problems or concerns and reported that he felt well. (Tr. 275–78.)

Mark Loftis, M.A., performed a consultative psychological evaluation on August 3, 2009, in connection with Plaintiff's SSA applications. (Tr. 228–32.) During the evaluation, Plaintiff indicated that he sometimes helps clean the house, mows the yard, picks up groceries, and keeps a small garden. (Tr. 229.) However, he explained that his mother does most of the housework and cooking and also manages the household finances. (*Id.*) Plaintiff also told Mr. Loftis that he has a girlfriend that he sees once or twice a week. (*Id.*) Mr. Loftis noted that Plaintiff's verbal skills were adequate and his affect and mood were normal. (Tr. 228.) Mr. Loftis also reported that Plaintiff maintained good eye contact throughout the evaluation and that Plaintiff's "executive functioning skills" were intact. (Tr. 228–29.) Mr. Loftis found that Plaintiff was well-oriented in "all spheres" of mental function, had an adequate general fund of knowledge, his

thought content and processes were logical and coherent, and he could answer simple arithmetic problems. (Tr. 230.) Mr. Loftis also stated that Plaintiff "appeared to be in the average range of intellectual functioning." (*Id.*) At the time, Plaintiff was not under psychiatric care and was not taking medication for anxiety or depression, though he had previously been prescribed medication for both after witnessing his father die from a brain hemorrhage. (*Id.*)

Mr. Loftis diagnosed Plaintiff with Anxiety Disorder, Not Otherwise Specified ("NOS"), and Depressive Disorder, NOS. (Tr. 231.) Mr. Loftis concluded that Plaintiff had mild limitations in his ability (1) to adapt; (2) to understand and remember; and (3) to sustain concentration, persistence, and pace; and that he had moderate limitations in his ability to socially interact. (*Id.*)

Andrew Phay, Ph.D., a Tennessee psychologist,[3] conducted a Mental Residual Functional Capacity ("RFC") Assessment of Plaintiff by reviewing Plaintiff's records on September 21, 2009, and concluded that Plaintiff was able to understand, remember, and execute simple one, two, and three-step instructions, as well as multi-step instructions. (Tr. 260–63.) Dr. Phay further explained that Plaintiff was able to make simple and independent work-related decisions, and had the ability to maintain attention and concentration for periods of at least two hours and complete a normal workweek with acceptable performance and productivity for certain tasks. (*Id.*) Dr. Phay found that Plaintiff had the ability to relate appropriately with peers and supervisors with occasional interruptions from psychologically based symptoms. (*Id.*) Additionally, Dr. Phay determined Plaintiff was able to maintain basic standards of neatness and cleanliness, set goals, adapt to routine work place changes, and travel to and from work. (*Id.*)

---

[3] Throughout the record, certain medical professionals are referred to as "State Agency" professionals without reference to the exact agency or governmental body for which such individuals worked. (*See, e.g.*, Tr. 49.) As Plaintiff lived in Tennessee during the relevant time periods and appears to have only sought treatment in Tennessee, the Court assumes such medical professionals were employed by the state of Tennessee.

On December 16, 2009, Brad Williams, M.D., reviewed Plaintiff's medical records and affirmed Dr. Phay's initial determination. (Tr. 264.)

In May 2010, Plaintiff sought treatment with the Volunteer Behavioral Health Care System ("VBHC"). (Tr. 310.) His initial intake indicated Plaintiff met the criteria for Anxiety Disorder, NOS, and Depressive Disorder, NOS. (Tr. 323–26.) He was referred for counseling and prescribed Celexa to treat his depression and anxiety. (Tr. 316, 326.) At his June 9, 2010, appointment, Plaintiff stated he didn't think the Celexa was helping him, so the Celexa was changed to Prozac. (Tr. 317–18.) Treatment notes indicate that Plaintiff's girlfriend stated on June 14, 2010, that Plaintiff had been improving since his last medication change: he had less agitation, better sleep, and did more things for himself. (Tr. 313.) On July 7, 2010, Plaintiff reported that he could tell the Prozac had helped, but he still felt depressed sometimes. (Tr. 319.) On September 30, 2010, he stated that he was doing better and did not feel as anxious or depressed. (Tr. 335.) Plaintiff further explained that he felt depressed once every two to three weeks and this usually lasted for one to two hours. (*Id.*) He also stated that he was sleeping and eating well and had been getting out more and enjoying himself while out. (*Id.*) During Plaintiff's treatment at the VBHC, his level of functioning was assessed at least twice on the Global Assessment of Functioning (GAF) scale.[4] Plaintiff's first recorded GAF score at VBHC was 45 on May 10, 2010 (Tr. 316), and his last recorded GAF score at VBHC was 60 on September 30, 2010 (Tr. 336).

---

[4] The Global Assessment of Functioning score is "a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.'" *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n. 1 (E.D. Mich. 2005) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) ("DSM-IV")). The score ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain personal hygiene, or serious suicidal act with clear expectation of death). *Id.* (citing DSM-IV at 32). Scores in the range of 41 to 50 show "serious symptoms OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id.* (quoting DSM-IV at 32). *Id.* Scores in the range of 51 to 60 indicate "the existence of moderate difficulty in social or occupational functioning." *Id.* (citing DSM-IV at 32).

Plaintiff testified that he began treatment at Plateau Mental Health Center in May 2010, and was being seen there every two to three months at the time of the ALJ's determination. (Tr. 26–27.) He reported having seen some improvement in his nervousness and depression, but not significant improvement. (Tr. 27.) Plaintiff maintained that the medication he has been prescribed for nervousness and depression made a difference "every once in a while." (Tr. 29.) Plaintiff further testified he had crying spells "maybe twice a month" and had difficulty going to the bathroom because that is where his father died. (Tr. 31–32.) He also stated he had problems sleeping, got nervous and stressed when in a crowd, and had difficulty with his memory. (Tr. 32–34.)

Plaintiff's counsel requested a determination of the claimant's IQ by Jerrell Killian, M.S., who performed a psychological evaluation of Plaintiff on November 17, 2010. (Tr. 328.) Mr. Killian found that on the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test, Plaintiff's verbal comprehension and full-scale scores were within the mild mental retardation range. (Tr. 329.) Mr. Killian diagnosed Plaintiff with mild mental retardation and concluded that he was capable of learning and sustaining simple one and two-step activities, but was limited in terms of activities requiring assessment, reasoning, and problem solving. (*Id.*)

## II.    STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Accordingly, the

reviewing court will uphold the Commissioner's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## III.    PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff asserts two main objections to Judge Knowles's Report. Plaintiff's first objection concerns the ALJ's determination that Plaintiff did not meet the requirements of being disabled because his condition did not meet or equal the severity requirements for an impairment or combination of impairments under the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. No. 25 at 1–4.) Plaintiff's second objection concerns the ALJ's determination that

Plaintiff's subjective complaints were not credible. (*Id.* at 5.) The Court evaluates each argument in turn.

A. *ALJ Letchworth's Determination Under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05*

Plaintiff asserts that the ALJ erroneously focused on isolated details taken out of context and misconstrued the overall import of the evidence in finding that Plaintiff did not meet the requirements of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2013) ("§ 12.05"). (Doc. No. 25 at 1.)

Under § 12.05, "intellectual disability" is defined as "[s]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." In order to find that the disability "manifested during the development period," the evidence must "demonstrate[] or support[] onset of the impairment before age 22." Further, §12.05 states the severity requirement must be met by satisfying the requirement of one of the four subsections (A, B, C, or D). Thus, to satisfy the requirements of showing "intellectual disability" under § 12.05, a claimant must prove: "(1) the claimant suffers from 'significantly subaverage general intellectual functioning,' (2) the claimant suffers from 'deficits in adaptive functioning,' (3) such deficits initially manifested during the developmental period (i.e., before age 22), and (4) one of the four criteria (A, B, C, or D) is met." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x. 868, 872 (6th Cir. 2003). To satisfy § 12.05 (C), which is the only subsection Plaintiff argues he meets, a claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Plaintiff makes several separate objections to the ALJ's finding regarding § 12.05. First, Plaintiff asserts that the ALJ failed to give adequate weight to the examination of Jerrell Killian,

and that the ALJ was incorrect in his determination that Mr. Killian did not address adaptive functioning. (Doc. No. 25 at 2.) Plaintiff also asserts that the ALJ improperly relied on (1) the opinion of Mark Loftis, and (2) Plaintiff's function report and notes from his medical provider that "did not address mental retardation at all," in his determination. (*Id.*) Additionally, Plaintiff claims that his level of functioning, basic activities, and education are consistent with mild mental retardation. (*Id.* at 3.) The Court addresses each individual objection separately.

      1.  <u>Deficits in Adaptive Functioning</u>

The ALJ found that Plaintiff failed to demonstrate that he suffered from the deficits in adaptive functioning required by the introductory paragraph of § 12.05, and therefore was not disabled under that section. (Tr. 50–51.) Plaintiff challenges this finding, arguing that it was based on the ALJ's mistaken conclusion that Mr. Killian did not address adaptive functioning in his report when to the contrary, the report presented sufficient evidence of deficits in Plaintiff's adaptive functioning. (Doc. No. 25 at 2.)

"A loss of adaptive functioning is 'manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.'" *Burns v. Comm'r of Soc. Sec.*, No. 1:10-cv-42, 2011 WL 7568592, at *6 (E.D. Tenn. Sept. 7, 2011) (quoting 20 C.F.R., pt. 404, subpt. P, app. 1, §12.00(C)(4)). Activities such as cleaning, shopping, cooking, and maintaining a residence, are considered "adaptive activities." 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 (C)(1).

During his examination of Plaintiff, Mr. Killian administered the WAIS-IV test to Plaintiff to evaluate his IQ. (Tr. 328–29.) Plaintiff's full scale score was 70, and Mr. Killian diagnosed Plaintiff with mild mental retardation. (*Id.*) Mr. Killian stated that Mr. Chaffin's IQ scores "seem consistent with Mr. Chaffin's adaptive functioning." (Tr. 329.) Additionally, Mr.

Killian made observations about Plaintiff's life that could indicate a deficit in adaptive functioning, including his enrollment in special education classes in high school, that he often has trouble understanding "big words," that it took Plaintiff several attempts to pass the written portion of the driver's license test, that he has not lived on his own and has assistance from his mother with whom he lives, and that has not done laundry or cooked except for the use of a microwave. (Tr. 328–29.)

Section 12.05 makes clear that Plaintiff must show both subaverage intellectual functioning and deficits in adaptive functioning. While Mr. Killian's report clearly addresses Plaintiff's intellectual functioning, his report provides little regarding adaptive functioning. Contrary to Plaintiff's contention, Mr. Killian's statement that Plaintiff's scores "seem consistent with" his adaptive functioning does not constitute an analysis of Plaintiff's adaptive functioning, as such a conclusory statement establishes neither that Plaintiff actually possesses *deficits* in adaptive functioning nor the severity of any such deficits. While Mr. Killian's discussion of Plaintiff's various limitations could be evidence of deficits in adaptive functioning, it does not require the conclusion that Plaintiff possesses the requisite deficits to satisfy § 12.05. Further, the Court finds the ALJ reasonably relied on other evidence in the record that indicates Plaintiff actually possesses adaptive functioning skills. The ALJ noted that Plaintiff received a high school diploma and passed school proficiency tests while in school. (Tr. 50.) The ALJ also determined Plaintiff showed good adaptive functioning in his later life because he is "capable of such activities as using a checkbook, driving, and shopping without assistance." (*Id.*) Further, the record indicates that Plaintiff is capable of performing a variety of activities of daily living, including driving a car, going grocery shopping, and maintaining a relationship with his girlfriend of over ten years. (Tr. 25, 28, 33; *see also Burns*, 2011 WL 7568592, at *7) (noting the

plaintiff's ability to perform household chores and participate in some social and recreational activities regularly precluded a finding that he lacked adaptive functioning).)

Additionally, there is virtually no evidence in the record to show that any alleged deficits Plaintiff possesses manifested before age twenty-two, as required by § 12.05. Mr. Killian's testing was performed in November 2010 when Mr. Chaffin was forty-five years old (Tr. 328), far past the statutory deadline of twenty-two. Plaintiff does not address this issue, mentioning only that his enrollment in special education classes during high school demonstrates longstanding deficits in his adaptive functioning. (Doc. No. 25 at 2.) However, the ALJ was aware of these special education classes and noted the conflicting evidence that Mr. Chaffin ultimately completed the twelfth grade and passed school proficiency tests during his developmental period. (Tr. 24–25, 47, 50.)

Accordingly, the Court finds the ALJ properly determined that Mr. Killian's report did not fully analyze Plaintiff's adaptive functioning. Further, the Court finds the ALJ's determination that Plaintiff had not shown the necessary deficits in adaptive functioning was supported by substantial evidence.

2. Weight Assigned to Mr. Killian's Examination and Mr. Loftis's Examination

Similar to his objection above, Plaintiff also disputes the ALJ's decision not to assign "significant probative weight" to Mr. Killian's examination—which yielded a full scale IQ score of 70—"because the testing and diagnosis were obtained after the developmental period and the claimant passed school proficiency tests." (Doc. No. 25 at 1–2.) Plaintiff also appears to object to the reliance or weight assigned by the ALJ to Mr. Loftis's examination as Plaintiff argues Mr. Loftis concluded, "without testing," that Plaintiff was functioning in "at least the average range of intelligence." (*Id.*)

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. §

404.1527(c) (2013). When determining how much weight to afford a particular opinion, an ALJ

must consider: (1) the examining relationship; (2) the treatment relationship—length, frequency,

nature and extent; (3) its supportability; (4) its consistency; and (5) its specialization. *Id.*; *see*

*also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

In his decision, the ALJ declined to assign significant probative weight to Mr. Killian's

exam for several reasons: (1) The testing and diagnosis were provided long after the

developmental period described in § 12.05; (2) Mr. Killian provided no analysis of the claimant's

adaptive functioning, which is a crucial element to be considered in determining whether § 12.05

criteria are satisfied; and (3) Mr. Killian's report was inconsistent with other evidence in the

record, including Plaintiff's self-assessment, Mr. Loftis's report, and Plaintiff's school records.

(Tr. 50.)

The ALJ explained that he placed more weight on Mr. Loftis's report because it was

consistent with the assessments of medical professionals from the state of Tennessee (Dr. Phay

and Dr. Williams), and also with the objective and clinical evidence of record. (Tr. 53.) The

ALJ acknowledged that because Dr. Phay and Dr. Williams were non-examining, their reports

generally are not given as much weight as those of an examining or treating psychologist. (*Id.*)

However, the ALJ concluded that they do deserve "some weight, particularly in a case like this

in which there exist a number of reasons to reach similar conclusions." (*Id.*) As such, because

Mr. Loftis's examination and Dr. Phay's and Dr. Williams's opinions were "largely consistent"

with each other and the objective and clinical evidence, Mr. Loftis's examination was accorded

significant weight. (*Id.*)

As discussed above, the Court has already found the ALJ's determination that Plaintiff lacked the requisite deficits in adaptive functioning was supported by substantial evidence. *See supra* Part III.1.A. Further, as is clear from the record and the ALJ's analysis, Mr. Killian's examination was inconsistent—while Mr. Loftis's examination was in accord— with other record evidence in determining the level of Plaintiff's cognitive limitations. Additionally, the ALJ clearly explained his reasoning for assigning different weight to each examination. As such, the Court finds the ALJ properly discounted Mr. Killian's report and properly afforded significant weight to Mr. Loftis's report, after scrutinizing both reports and comparing them with other evidence in the record. The Court thus finds the weight afforded to both reports by the ALJ is supported by substantial evidence.

### 3. Plaintiff's Diagnosis of Mild Mental Retardation

Plaintiff's final objection to the ALJ's determination under § 12.05 focuses on Plaintiff's diagnosis of mild mental retardation. First, Plaintiff asserts that the ALJ improperly relied on Exhibits 6E (Plaintiff's function self-report) and 6F ("notes from [Plaintiff's] medical provider") to reject Mr. Killian's diagnosis of mild mental retardation because these exhibits do not address mention retardation. (Doc. No. 25 at 2.) Plaintiff also contends that Mr. Chaffin's level of functioning is consistent with mild mental retardation as described in the DSM–IV, and the basic activities performed by Mr. Chaffin are consistent with mild mental retardation. (*Id.* at 3.) Lastly, Plaintiff asserts that he has debilitating depression that meets the "second requirement of Listing 12.05C." (*Id.* at 4.)

As an initial matter, Plaintiff appears to misinterpret the import of a diagnosis of mild mental retardation in determining whether a claimant meets the requirements for disability under § 12.05. In his decision, the ALJ used Plaintiff's function report and other medical evidence in

the record to determine that the criteria of § 12.05 was not satisfied.  As explained in the

Magistrate Judge's Report, the § 12.05 inquiry is distinct from a diagnosis of mild mental

retardation by a medical professional as the criteria under § 12.05 are different than the

description of mild mental retardation in the DSM-IV.  (Doc. No 24 at 19–22.)  While both

"intellectual disability" under § 12.05 and "mental retardation" under the DSM-IV address

similar issues, the only relevant factors for purposes of this analysis are those contained in the

regulations as such provide the framework within which eligibility for disability benefits are

determined.  The ALJ's determination that Plaintiff was not disabled under §12.05 was based in

part on lack of deficits in adaptive functioning (Tr. 50), which is not necessarily defeated by

simply pointing to a diagnosis of mild mental retardation.  While Exhibits 6E and 6F[5] may or

may not be relevant to a determination of whether Plaintiff should be diagnosed with mild

mental retardation, they are clearly relevant in a § 12.05 determination as they pertain to

Plaintiff's intellectual and adaptive functioning.  Further, whether Plaintiff's level of functioning

or daily activities are consistent with a diagnosis mild mental retardation is not dispositive for a

disability determination under § 12.05 as it does not fully address the criteria provided by that

section.

     Finally, Plaintiff's assertion that he has depression that is significantly limiting and meets

the "second requirement of Listing 12.05C," (Doc. No. 25 at 4) fails to overcome the ALJ's

---

[5] In his Report, Judge Knowles noted that Exhibit 6F in the record, (Tr. 228–32), is not notes from Plaintiff's medical provider as described by Plaintiff, but rather Mr. Loftis's notes, and further explained Mr. Loftis was a non-examining consultant, not Plaintiff's medical provider.  (Doc. No. 24 at 16 n.4.)  As Plaintiff does not clarify which portion of the record he is referring to, Judge Knowles declined to address Plaintiff's argument based on "notes of his medical provider," outside of explaining  that the court had previously reviewed and credited Mr. Loftis's evaluation in connection with the § 12.05 criteria.  (*Id.*)  As Plaintiff has failed to provide any clarification on this point in his Objections, the Court similarly declines to address any argument based on "notes of his medical provider" and further notes the Court has already found the ALJ properly assigned significant weight to Mr. Loftis's report. *See supra* Part III.1.B.

initial finding pursuant to § 12.05.  While not entirely clear from Plaintiff's argument, the Court interprets Plaintiff's objection as referring to the § 12.05(C) requirement that the mental impairment impose a significant work-related limitation of function.  As evidence that his impairment meets this requirement, Plaintiff points to Mr. Loftis's diagnoses of Anxiety Disorder, NOS, and Depressive Disorder, NOS, and Mr. Loftis's opinions regarding Plaintiff's social skills, particularly his observation that Plaintiff is "moderately limited in social interaction skills necessary to deal with coworkers and supervisors." (*Id.*)  Plaintiff presents as further support that he sought treatment for his anxiety and depression, his self-rating of his depression, and his GAF score.  (*Id.*)

In his exam, Mr. Loftis opined that Plaintiff was "moderately limited" in his social interaction skills, (Tr. 231), while the language of the regulation clearly requires a severe limitation.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  The ALJ also found that Plaintiff was able to perform myriad activities, including driving, shopping by himself, and keeping a garden. Additionally, Plaintiff's having sought treatment and his low GAF score are not necessarily persuasive as to the significance of his impairment, given that the record shows improvement in both his condition and his GAF score after receiving treatment.  (Tr. 313, 319, 336.)  However, regardless of whether Plaintiff can establish he meets the "second requirement of Listing of 12.05C," Plaintiff still cannot show the necessary deficits in adaptive functioning required for a finding of disability under § 12.05.   As a finding of disability requires the claimant to show both the deficits enumerated in § 12.05 *and* the level of severity of subsection (A), (B), (C), or (D), whether Plaintiff satisfies § 12.05(C) does not affect the ALJ's finding that Mr. Chaffin did not satisfy § 12.05.  Accordingly, the Court finds the ALJ's determination that Plaintiff is not disabled under § 12.05 is supported by substantial evidence.

16

### B. *Plaintiff's Subjective Complaints and Credibility Determination*

Plaintiff's last objection is to the ALJ's discounting of Plaintiff's own complaints of depression and anxiety, and the ALJ's assessment of Plaintiff's credibility. (Doc. No. 25 at 5.)

The Sixth Circuit has established the following criteria for evaluating a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. . . . [T]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852–53 (6th Cir. 1986) (internal quotation marks omitted). When analyzing subjective complaints of pain, the ALJ must also consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and other treatment or measures used to relive pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g.*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *Id.* If the ALJ rejects a claimant's testimony as not credible, the ALJ must clearly state the reasons for discounting the testimony. *Felisky*, 35 F.3d at 1036.

An ALJ may not ignore a claimant's subjective complaints, but the ALJ's findings regarding the credibility of a claimant's testimony is entitled to great deference. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); *Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). The ALJ observes the claimant's demeanor and credibility, and therefore his or her opinion regarding a claimant's credibility is especially relevant. *See, e.g.*, *Walters,* 127 F.3d at 531.

Here, ALJ Letchworth reached his credibility determination by examining the objective medical evidence, Plaintiff's own report of his daily activities, and Plaintiff's demeanor at the hearing. (Tr. 53–54.) The ALJ noted that, "[o]bjective findings are minimal despite the claimant's complaints." (Tr. 54.) Additionally, the ALJ found Plaintiff's failure to seek ongoing mental health treatment prior to May 2010 was inconsistent with the extent of psychological symptoms he alleged he experienced. (Tr. 53.) The ALJ further determined that the treatment for Plaintiff's allegedly disabling conditions had been "brief, routine, and conservative in nature." (*Id.*) The ALJ specifically considered Plaintiff's own statements regarding his daily activities and explained that, "[t]he claimant's admitted daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. His ability to carry out a range of daily activities tends to negate the credibility of his subjective complaints." (Tr. 53–54.) The ALJ also recorded his own observations of Plaintiff during the hearing: "The claimant demonstrated no abnormal social behaviors during the hearing . . . At the hearing, the claimant demonstrated average intellectual functioning and was able to follow the hearing proceedings and all lines of questioning." (Tr. 51.) The ALJ found that Plaintiff's medical records indicate that treatment resulted in improvement of his condition. (Tr. 53.)

The Court finds the ALJ properly determined that Plaintiff's complaints were inconsistent with the objective medical evidence and could not be considered fully credible after examining Plaintiff's clinical and diagnostic records, his demeanor at the hearing, and his statement of daily activities. The Court further finds the ALJ considered all relevant evidence in assessing Plaintiff's subjective complaints and clearly stated his reasons for discounting Plaintiff's credibility. The ALJ is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531. Accordingly, the Court finds the ALJ's determination regarding Plaintiff's credibility is supported by substantial evidence in the record.

## IV.    CONCLUSION

The Court finds substantial evidence in the record supported the ALJ's decision and therefore, **ADOPTS** the Report in its entirety. Plaintiff's Motion (Doc. No. 15) is **DENIED** and the decision of the Commissioner is **AFFIRMED**. The Commissioner's Motion to Stay Because of Lapse of Appropriations (Doc. No. 26) is **TERMINATED AS MOOT.** This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the __26th ____ day of March, 2014.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT